## GEORGE LIPPY *vs.* PETER MASONHEIMER.

A defendant, in an equity cause, has the right of appeal, notwithstanding he failed to appear, and an interlocutory decree was passed against him under the act of 1820, ch. 161, in pursuance of which the cause was conducted to a final decree.

Whether a contract between husband and wife for a separation, not acknowledged or recorded, without trustees, with no indemnity to the husband against the debts of the wife by any third person, and no consideration passing to the husband through any separate estate of the wife, has *any validity* in a court of equity? *Quere.*

The husband will not be compelled, at suit of the alienee of the wife, to unite in a deed to perfect the legal title to land settled upon the wife by such a contract, and sold by her.

When called upon to enforce any stipulation in agreements for separation, in regard to property, merely auxiliary to the separation, the courts of this State will not go further than they are bound to go by the authority of adjudged cases.

APPEAL from the Equity Side of the Circuit Court for Carroll county.

The bill in this case was filed on the 2nd of December 1854, by the appellee against the appellant, and Barbara Lippy his wife, alleging, that on the 1st of September 1837, the appellant and his wife agreed to separate, and entered into the contract for a separation, which is set out in the opinion of this court; that according to this agreement, the parties have lived separate from its date, and continue to do so; that the husband delivered to the wife the property mentioned in the agreement, and that the latter has continued in possession of the land, using it as her own, free from any control or interference by her husband, and has maintained and supported herself, and continues so to do, without aid from her husband, who has refused to pay any of her debts or contribute to her support, alleging that he was released therefrom by virtue of this contract, of which he has uniformly claimed the benefit and protection; that in December 1854, the wife, by her *sole deed,* sold and conveyed the land to the complainant, the husband refusing to unite in the deed; that the sale is beneficial to the wife, who is over seventy years of age, and unable to super-

vise or conduct the management and cultivation of the land, and that the. interest of the purchase money, ($4000,) will support her much more comfortably than the income from the land; and that the deed is inoperative to convey the legal title unless the husband unites in it. The prayer of the bill is, that the husband may be decreed to convey his interest in the land to the complainant, or that the husband and wife may be decreed to unite in a conveyance of a complete legal title to him, and for general relief.

The wife failed to appear, the husband appeared, but failed to answer, and an interlocutory decree was passed against them, and testimony taken under an *ex-parte* commission to establish the allegations of the bill.

The court, (NELSON, J.,) passed a decree, directing the husband and wife to unite in a deed to the complainant on or before a certain day, and in default thereof appointing a trustee to make the conveyance. From this decree the husband appealed.

The appellee moved to dismiss the appeal, for the reason stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*James Raymond* for the appellant, argued:

1st. That the law views with jealousy, as against its general policy, all species of separation of husband and wife, for any species of separation encourages absolute separation. I, therefore, regard the contract of 1837 as having no binding authority, but as revocable at the will of either party. 2 *Story's Eq.*, secs. 1426, 1427, 1428. *Clancy on Husband & Wife*, 372. 1 *Jac.*, 126, *Westmeath vs. Westmeath*. But to be valid in any case and for any purpose, there must be a *trustee*, for "a deed of separation entered into by the husband and wife alone, without the intervention of trustees, *is utterly void.*" 2 *Story's Eq.*, sec. 1428, citing 3 *Ves.*, 352, 359, 361, *Legard vs. Johnson.* 5 *Bligh, (N. S.,)* 375, *Westmeath vs. Salisbury.* *Clancy on Husband & Wife*, 392, 393. 11 *Ves.*, 526, *St.*

*John vs. St. John.* 8 *Term Rep.*, 546, *Marshall vs. Rutton.*
2 *Bright on Husband & Wife*, 330. 4 *Beav.*, 287, *Elworthy
vs. Bird.* 2 *Roper on Husband & Wife*, 293, *note (k.)* The
reason of these decisions is, that the wife is incompetent to
*contract* for such a separation, and hence it has been further
held, that such deeds must contain a *covenant* to indemnify
the husband against the wife's debts, and such covenant can
only be made with a third person, the *trustee.* *Vide* same
authorities, and *Clancy on Husband & Wife*, 388, 389, 393.
There is no such covenant in this agreement, and there was,
therefore, in fact, no *consideration* moving to the *husband* for
its execution. If such a contract as this is valid, then the
marriage relation is but a *mere partnership*, and husband and
wife are but *partners* in reference to all their property.

2nd. That Masonheimer, the complainant, could acquire
no rights by making a contract with a married woman, and a
deed executed by her alone is an instrument unknown to our
law. He, at least, has no equity to enforce this contract,
whatever may have been the rights of the *wife* to ask its
enforcement. A wife cannot make an unqualified and abso-
lute disposition of her separate maintenance. *Clancy on Hus-
band & Wife*, 382. 3 *Ves.*, 437, *Hyde vs. Price.* The law
will not suffer the separate maintenance to become vested in
third persons, because that might prove an obstacle to a future
arrangement between husband and wife to become reconciled,
and have all things as they were before the separation. Even
the power of a creditor to attach separate maintenance is lim-
ited. *Clancy on Husband & Wife*, 384. 1 *Ves.*, *Jr.*, 277,
*Lillia vs. Airey.* In this case the husband has an interest in
preventing the land from being sold and the proceeds disposed
of by the wife, for he has received no consideration for the
contract, and has no indemnity against the wife's debts.

*Oliver Miller* and *Wm. P. Maulsby* for the appellee, argued:

1st. That the contract was *valid* and will be enforced in
equity as *against the husband.* It will be seen from the terms
of this instrument that it is a contract for an *immediate, final,*
and *perpetual separation.* Now it is objected, 1st, that *all*

Lippy *vs.* Masonheimer.

*such* contracts are *void* as being against *public policy*. But the authority of *adjudged* cases, from the decision in *Rex vs. Mead*, 1 *Burr.*, 542, by *Lord Mansfield*, in 1758, to the *present day*, is in favor of the *validity* of such deeds of separation, the *regrets* and *complaints* of individual judges in latter times that the law *ought to be* otherwise, to the contrary notwithstanding. The reason assigned for sustaining such deeds is, that "there is no authority that can interpose to *oblige* parties to cohabit together, where they have a settled determination to the contrary." But it is objected, in the second place, that the intervention of a *trustee* is necessary to the validity of such a deed, in order that there may be a covenant to indemnify the husband against the debts of the wife. This is a question entirely *new* in Maryland law, and one of interest and importance. The court will observe that the question is, can such a contract be enforced as *against the husband?* Mr. Justice Story says, that *without a trustee* such deeds are absolutely void, but in this position he is not sustained by the cases cited by him, nor by other elementary writers of the highest authority. In the case of *Guth vs. Guth*, 3 *Brown's Ch. Rep.*, 614, upon a bill filed by the wife to enforce *against the husband* a contract for separation and separate maintenance, in which there was *no trustee* and *no covenant* against debts, *Lord Alvanley*, after great research and deliberation, decided that the contract was *valid*, and decreed its enforcement. This decision, *expressly upon the point*, has been assailed by the *opinions* of eminent judges, but has never been overruled by any *adjudged case*, and, in the language of Chief Baron Richards, in *Durant vs. Titley*, 7 *Price*, 577, "the *opinions* of judges, however great and learned, are not to be put in competition with *decisions* determining the point and settling the law." The cases of *Legard vs. Johnson*, 3 *Ves.*, 352, and *Westmeath vs. Salisbury*, 5 *Bligh*, *(N. S.,)* 375, were *decided* upon entirely *different grounds*. In the former case the lord chancellor says: "It is not necessary to found my decree upon an opinion directly contrary to the case of *Guth vs. Guth*." In the latter the one deed was held void *because* it provided for a *prospective separation*, and the other *because* there had been a *reconciliation*.

MARYLAND REPORTS.

These are the only cases cited by Judge Story to sustain his position. On the other hand, in 2 *Spence's Eq.*, 527, it is said, that such a contract, where there is *no trustee*, "will be binding *on the husband* if a consideration has passed from the wife." *Roper*, in his valuable treatise on the law of husband and wife, 289 to 298, with masterly ability, reviews all the cases upon the subject, and comes to the conclusion that the case of *Guth vs. Guth* has never *been overruled*, and that in view "of *actual decisions*, without regard to *dictum* upon *dictum*, not amounting to decision," there is no difficulty, so far as the *husband* is concerned, in saying, that he is bound by his stipulations, "and that it is immaterial, in equity, whether he agree *with a trustee*, or the *wife herself*, to allow her maintenance, or whether there be or not *any consideration for the provision, except that of the agreement to live separate*, or any covenant with trustees, or any one, to indemnify him against her debts." In view of these authorities, the contract in question must, we think, be held valid.

2nd. The next question is, has the appellee the right to ask its enforcement against the husband? ‑ It is not denied but that he paid a full price for the land, and that it is *beneficial* for the wife to sell it, she being now over seventy years of age and incapable of managing the property. The land was her *maiden real estate*, in which the husband had but a tenancy by the curtesy, and not even that, for the record does not show that any child was ever born to them, in which case he would only be entitled to the usufruct *during coverture*. The contract provides, that the wife shall have this land "in as full and ample a manner as if she were a *feme sole*," thus giving her the right to dispose of it at pleasure. It is further alleged and proved, that from the date of the contract, (1st of September 1837,) to the sale to Masonheimer, on the 1st of December 1854, more than seventeen years, the wife lived separate from her husband, supported herself, paid her own debts, and that the husband uniformly and constantly claimed the benefit of the contract of separation. The contract has thus been fully carried out by *both parties*. Having thus *acquiesced* in, and availed himself of, the validity of this contract, can the husband

now refuse to carry out its stipulations, and to unite in a deed to effect that which he stipulated the wife should have power to do? In 2 *Spence's Eq.*, 526, it is said: "A contract which contemplates an immediate separation, not amounting to an attempt to release the marriage contract, is good at law, and its provisions, so far as it *relates to property, will be carried into execution by the court of chancery.*" As regards the power of the wife to dispose of her separate property, it is clear she has the power to dispose of it in the manner provided for by the instrument settling it upon her, and that equity will in all cases enforce against heirs, devisees and trustees, as well as *against the husband* and his representatives, the rights of the *donee or* appointee of the wife. 2 *Story's Eq., secs.* 1388 to 1391, and *secs.* 1378 to 1380.

ECCLESTON, J., delivered the opinion of this court.

The motion to dismiss must be overruled upon the authority of *Oliver vs. Palmer & Hamilton*, 11 *Gill & Johns.*, 137. There appeals had been taken from the original decree, and from the order of the court dismissing the petition which asked to have the enrollment of the decree opened. And motions were made to dismiss both appeals. On page 141, it will be seen, the counsel for the appellees there insist: "That inasmuch as the appellants were in default, in failing to appear and answer, and the said decree was obtained in virtue of the provisions of the act of 1820, chapter 161, the defendants have no right to seek a reversal thereof, by appeal in the mode now attempted." The court however overruled both motions.

In the case before us the motion to dismiss takes the ground that the defendant has no right of appeal, "because he did not file an answer in the court below, and an interlocutory decree was passed under the act of 1820, ch. 161, in pursuance of which the cause was conducted to final decree."

If it was proper to overrule both motions in the case referred to, it is difficult to perceive why the present motion should not share the same fate.

On the 1st of September 1837, in consequence of various unhappy differences between George Lippy and his wife,

Barbara, they entered into a written agreement under seal, in which they agreed to live separately and apart from each other during the remainder of their lives : the husband agreeing to allow the wife "for her maintenance and support, and for her property, in as full and ample a manner as if she were a *feme sole,* forever," certain real estate which had been devised to her by her father, and also four hundred dollars worth of certain kinds of personal property; and the wife agreeing to relinquish all right, title and interest in the estate of the husband whether she survived him or not. This instrument was not acknowledged by either party nor was it recorded. It is therefore merely an agreement between husband and wife for a separation, there being no trustees, no indemnity to the husband against the debts of the wife by any third person, and no consideration passing to the husband, through the instrumentality of any separate property of the wife.

Whether such a contract has any validity, even in a court of equity, is a question which has been much discussed, as will appear from the conflicting views of distinguished men, to be found in the authorities referred to in argument. But for the purposes of this case we need not decide which is the correct view of the subject.

The question for consideration is not, whether, under this agreement a court of equity should compel the husband to pay to the wife what he agreed to pay her for separate maintenance ; for it is conceded, that shortly after the execution of the contract, the property which the wife was to have under it, she became possessed of, and that the husband has never since interrupted her in the enjoyment of it. But the application is to perfect a title in the appellee, Masonheimer, to the real estate which the wife was to have for her separate maintenance; and which she has agreed to sell and has attempted to convey to him. The deed executed by her for that purpose cannot, under the circumstances, transfer a valid title, as is conceded on both sides. And the question to be decided, is, whether a court of equity will consummate the title.

To permit the sacred, important and peculiar relation created by marriage, to be virtually destroyed, by an agreement be-

tween the parties themselves, which is to operate as a private divorce, has very properly been considered by very able jurists, to be contrary to the spirit and policy of the law. And such being the true character of the principal object and design of agreements for separation, when called upon to enforce any stipulation in regard to property, merely auxiliary to the separation, we are not disposed to go further than we are bound to go by the authority of adjudged cases.

We have seen that the instrument before us makes no provision to indemnify the husband against the debts of the wife. He, therefore, has a deep interest in preventing the real estate from being converted into money, thereby enabling the wife to dispose of it at her will and pleasure. By the arrangement, no regular deed or settlement has been executed, which confers authority upon any one to make an effectual conveyance of the estate, without the consent and participation of the husband in such conveyance, and as he refuses to give his consent, this court will not compel him to unite in perfecting the title sought to be obtained by the appellee under a sale from the wife.

The decree will therefore be reversed, and the bill dismissed with costs to the appellant in this court ; for which purpose a decree will be signed.

*Decree reversed and bill dismissed.*